PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

CHRISTIAN HAYWARD,  )
 ) CASE NO.  1:19-cr-717
Petitioner,  )         (1:24-cv-872)
 )
v.  ) JUDGE BENITA Y. PEARSON
 )
UNITED STATES OF AMERICA,  )
 ) **ORDER**
Respondent.  ) [Resolving ECF No. 149]

Pending before the Court is *pro se* Petitioner Christian Hayward's Motion to Vacate and/or Amend Sentence under 28 U.S.C. § 2255, alleging ineffective assistance of counsel.[1] ECF No. 149.  The motion is fully briefed.  Gov't Opp. Br., ECF No. 151; Pet. Reply, ECF No. 152.  The Court has been advised, having reviewed the parties' briefs, applicable case law, and the record.  For the reasons stated herein, Petitioner's Motion to Vacate and/or Amend Sentence under § 2255 is denied.

## I.    BACKGROUND

### A. Petitioner's Criminal Conviction

On October 24, 2019, United States Drug Enforcement Administration ("DEA") agents from the Omaha Field Division were conducting undercover interdiction-enforcement at a Greyhound bus station in Omaha, Nebraska.  Final Presentence Investigation Report ("PSR"), ECF No. 129 at PageID #: 1231, ⁋ 5.  Agents identified Brady Hill, Jr. as the owner of a suspicious blue duffle bag and detained him.  ECF No. 129 at PageID #: 1231, ⁋ 6.  They

---

[1] Petitioner's motion was submitted as a letter to the Court requesting relief from judgment due to ineffective assistance of counsel.  ECF No. 149.  The Court construes Petitioner's letter as a § 2255 motion.  *See Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001) (citing *Cruz v. Beto*, 405 U.S. 319 (1972)).

(1:19CR717)

searched the bag with Hill's consent[2] and found 15 cellophane bags, each containing

approximately one pound of methamphetamine.  ECF No. 129 at PageID ##: 1231-32, ▶ 8.

       While in custody, Hill told DEA agents that Petitioner instructed him to transport the

drugs from Los Angeles and deliver them to Petitioner in Cleveland.  ECF No. 129 at PageID #:

1232, ▶ 9.  Hill also told investigators that he had transported drugs for Petitioner on multiple

other occasions.  ECF No. 129 at PageID #: 1232, ▶ 9.  According to Hill, Petitioner had flown to

Los Angeles a few days earlier and personally packed the 15 methamphetamine bags into the

duffle and wiped each bag with alcohol.  ECF No. 129 at PageID #: 1232, ▶ 9.  Petitioner then

instructed Hill to take a Greyhound bus to Cleveland, meet Petitioner curbside in front of the bus

station, and place the duffle in Petitioner's vehicle.  ECF No. 129 at PageID #: 1232, ▶ 9.  Hill

and Petitioner discussed their plans *via* text messages and phone calls.  ECF No. 129 at PageID

#: 1232, ▶ 9.

       Using a phone number provided by Hill, Cleveland law enforcement tracked Petitioner's

cellphone and surveilled his vehicle.  Petitioner was pulled over near the bus station, and police

removed him and a passenger, Bennie Ford, Jr., from the vehicle.  ECF No. 129 at PageID #:

1232, ▶ 11.  Officers found three cellphones and $2,000 in cash in Petitioner's car.  ECF No. 129

at PageID #: 1232, ▶ 11.  Police later determined that the cash was intended to compensate Hill

for transporting the drugs from Los Angeles to Cleveland.  ECF No. 129 at PageID #: 1232, ▶

11.  Officers called the number Hill had provided them, which rang to one of the cellphones in

Petitioner's car.  ECF No. 129 at PageID #: 1232, ▶ 11.  Petitioner was arrested, taken to the

---

    [2] Hill consented to the search after a police canine alerted officers to the duffle bag.
ECF No. 129 at PageID ##: 1231, ▶ 8.

(1:19CR717)

Cuyahoga County Jail, and later transferred to the United States Marshals Service's custody.

ECF No. 129 at PageID #: 1232, ⁋ 12.

On November 19, 2019, Petitioner was indicted on one count of Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance, 21 U.S.C. § 846.  Indictment, ECF No. 10.  The Indictment included a penalty enhancement under 21 U.S.C. § 841(b)(1)(A)— increasing the mandatory minimum sentence from 10 years to 15 years—because, at the time of the offense charged, Petitioner had a prior serious violent felony conviction under Ohio Rev. Code § 2907.02 (rape of a child under the age of 13).  ECF No. 10.  During sentencing, the Government withdrew the § 841 enhancement, explaining that the underlying conviction did not constitute a "serious violent felony" because it was not committed with force or violence.  Sent'g Hr'g, ECF No. 142 at PageID ##: 2888-89.  After a jury trial, Petitioner was found guilty on Count I.  Jury Verdict Form, ECF No. 108.  The jury also found the amount of methamphetamine at issue was 500 grams or more.  ECF No. 108.

### B. Plea Offers

#### 1. *Pre-indictment plea discussions*

Prior to indictment, preliminary discussions regarding a possible plea agreement were had between counsel for the Government and Petitioner.  On November 7, 2019, Assistant United States Attorney Margaret Sweeney emailed defense counsel Steven Bradley the following:

> Steve,
>
> I wanted to touch base about Hayward before our preliminary/detention hearing next week.  Jeff Lazarus[3] let me know

---

[3] Attorney Lazarus is a Deputy Federal Defender who represented Hayward at his preliminary and detention hearings, before Attorneys Bradley and Mark Marein made

3

(1:19CR717)

> that he had spoken with you about Hayward's interest in pleading pre-indictment. Jeff let me know that Hayward was interesting [*sic*] in pleading to the mandatory 10 years pre-indictment, considering he is facing 15 after indictment. If that is something he is still considering, I am willing to seek approval for it, but we will need to delay the time to indict at the prelim hearing, because the indictment deadline is the following week.
>
> Can you let me know if you want to go down that route, and if so, I'll file a motion to continue the time to indict with the court.

Gov't Opp. Br., ECF No. 151-1 at PageID #: 3158. The next day, Attorney Bradley responded:

> Margaret:
>
> I am travelling to see Mr. Hayward on Monday to confirm that I will be entering my appearance on his behalf. I will most certainly discuss the issues raised in your e-mail. I will get back with you after my visit.

ECF No. 151-1 at PageID #: 3157. The following week, Attorney Bradley emailed the Government's counsel:

> Margaret:
>
> We traveled to see Mr. Hayward yesterday. . . . We discussed the possibility of pleading by way of Information to the 10 year minimum mandatory. He is unwilling to enter into such an agreement.

ECF No. 151-1 at PageID #: 3157. As a result of that communication, the Government did not approve, offer, or pursue a formal *pre-indictment* plea agreement. Post-indictment, the Government did not offer Petitioner any formal plea deal before or during trial. ECF No. 151 at PageID #: 3148.

### 2. Missouri v. Frye *inquiries*[4]

---

Notice of Appearance. *See* Lazarus Notice of Appearance, ECF No. 6; Bradley Notice of Appearance, ECF No. 8.

[4] In this ruling, the Supreme Court found that "as a general rule, defense counsel has the duty to communicate formal prosecution offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused" and concluded that

4

(1:19CR717)

   The Court made several inquiries concerning plea offers and other proposed resolutions throughout the criminal proceedings.  First, during a final pretrial conference held on August 6, 2020, the Court conducted an inquiry regarding any pending plea offers, consistent with the United States Supreme Court's opinion in *Missouri v. Frye*, 566 U.S. 134 (2012).[5]  Min. of Proc. [non-document] Final Pretrial Conf. (Aug. 6, 2020) ("The Court conducted an inquiry under *Missouri v. Frye* and *Padilla v. Kentucky*").  Next, on October 15, 2020, the Court made another *Frye* inquiry during a suppression hearing:

> THE COURT:  Ms. Sweeney, I typically inquire about any offers made to resolve the matter, and, of course, Mr. Hayward's citizenship.
>
> Have there been any offers made since we were last together?
>
> MS. SWEENEY:  No, Judge.

Suppression Hr'g and Final Pretrial Conf., ECF No. 135 at PageID #: 1630; Min. of Proc. [non-document] Final Pretrial Conf. and Suppression Hr'g (Oct. 15, 2020) ("The Court conducted an inquiry under *Missouri v. Frye* and *Padilla v. Kentucky*.").  Finally, at the request of the Government, the Court conducted a third *Frye* hearing after empaneling the jury trial[6]:

> THE COURT:  You likely know, and I don't mean to condescend, *Missouri versus Frye*, the case that requires that trial court judges on the open record have the government place any offer to resolve the trial made to the defendant and have the defendant, through counsel if he chooses, acknowledge the receipt of the offer, [say whether] it's under consideration or it's rejected.

---

counsel's failure to do so may prejudice the accused if the plea offer lapses and the accused demonstrates "a reasonable probability [that he would] have accepted the earlier plea offer had [he] been afforded effective assistance of counsel.  566 U.S. 134 (2012) (syllabus). Steering well clear of violating Rule 11, the undersigned customarily makes a "*Frye*" inquiry at critical stages of the prosecution.

 [5] The conference was conducted virtually in accord with COVID-19 protocols in place at that time.  *See* General Order 2020-06.

 [6] This *Frye* inquiry was conducted outside the jury's presence.  *See* ECF No. 139 at PageID #: 2218.

(1:19CR717)

Ms. Sweeney, when you're ready.

MS. SWEENEY:  Thank you, Judge.  There were no formal offers made in this case.  There were preliminary plea negotiations, but no offers approved formally by the United States Attorney's Office that were presented to the defendant.

Thank you, Judge.

THE COURT:  Thank you.  Defense counsel, does that comport with your understanding, no formal offers made?

MR. BRADLEY:  That is correct, Your Honor.

THE COURT:  And while we understand that it's usually the United States that initiates the offer-making, it certainly could come from the defense.  You've made nothing to the United States, have you?

MR. BRADLEY:  That is correct, Your Honor.

THE COURT:  Fair enough.

Tr. of Trial, vol. 2A, ECF No. 139 at PageID ##: 2218-19.

The PSR indicated that Petitioner did not provide a statement accepting responsibility. ECF No. 129 at PageID #: 1233, ¶ 17.  At the sentencing hearing, Petitioner's attorney acknowledged he had not made any such statement.  Sent'g Hr'g Tr., ECF No. 142 at PageID #: 2912.  The Court remarked that a statement accepting responsibility would have contradicted statements Petitioner made in his numerous letters to the Court, in which he maintained his innocence.  ECF No. 142 at PageID #: 2912 (clarifying that "the letters [sent by Petitioner] would contradict any such statement, because all the times he's written to me, he's done everything but demonstrate an acceptance of responsibility, basically [he] den[ies] knowledge of what brought him to court and claim[s] that he wasn't involved.  If he was involved, he was either innocent or at least not guilty.").

### 3.  *Petitioner's letters*

6

(1:19CR717)

Before, during, and after trial, Petitioner and his family sent the Court approximately 70 letters.  Pet. Ltrs., ECF No. 131.  In general, these letters maintained Petitioner's innocence, claimed he had no knowledge about the methamphetamine found in Hill's possession, and pleaded family and medical reasons for his release.  ECF No. 142 at PageID ##: 2909-12.  The letters do not indicate or mention that Petitioner desired or instructed his attorney to seek, a plea agreement.  Rather, in a letter, sent in early 2020, Petitioner declared: "I'll die before I plea to anything I had no knowledge of."  ECF No. 131 at PageID #: 1266.

## C.  Sentence and Appeal

### 1.  Petitioner's Background

Prior to sentencing, the United States Probation Office prepared a PSR which calculated Petitioner's offense level and criminal history, and provided information about Petitioner's background, including his familial, educational, and criminal histories.  ECF No. 129.  According to the PSR, Petitioner was born in Cleveland, Ohio in 1976.  ECF No. 129 at PageID #: 1242, ⁋ 54.  He attended John Adams High School through tenth grade and obtained his GED in 1994 from the Cuyahoga Hills Boys School (now known as Cuyahoga Hills Juvenile Correctional Facility) located in Highland Heights.  ECF No. 129 at PageID #: 1242, ⁋ 62.  Petitioner's criminal history included numerous state-court drug trafficking and possession charges (ECF No. 129 at PageID #: 1234-35, ⁋⁋ 30, 32-33) and a pending attempted murder charge for which a capias was outstanding.  ECF No. 129 at PageID #: 1240, ⁋ 52.

Although Petitioner reported no past or present substance abuse, USPO determined such claims were false because he tested positive for cocaine at the time of his arrest in October 2019.  ECF No. 129 at PageID #: 1242, ⁋ 61.  Petitioner maintained this was the "one and only time he

(1:19CR717)

experimented with powder cocaine."[7]  ECF No. 129 at PageID #: 1242, ⁋ 61.  Furthermore,

Petitioner published two autobiographical books which reference his history of drug trafficking

and drug use.  ECF No. 129 at PageID #: 1243, ⁋ 63.  The first book, The Street God: I Won

Without Telling (2015), includes the following notable quotes:

- Although all incidents in this book are true, names have been changed to protect the identity of others.

- A snitch anywhere is a threat to every hustler in the world.

- My first successful robbery etc.

- I kept good dope.

- I grabbed my 9mm. It was an ugly German Ruger.

- In 1994, I bought a new TEC-9 and a couple ounces of crack.

- All I could think to do was pull out my gun. All the time I had a loaded 357 on me and four and ½ ounces of freshly cut crack.

- The Mexican would always tell me, "remember if u [*sic*] are not tripling your money, you ain't hustling, you gotta [*sic*] hit the road. A true hustle goes where the dope is and says f—k a middle-man"; and

- The defendant had a tattoo on his back that said, "F—k the Law" and I meant it from the heart.

ECF No. 129 at PageID #: 1243, ⁋ 64.  Petitioner published a second book, The Street God 2:

Statute of Limitations (2018), in which he references, *inter alia*, dealing five to ten bricks of

narcotics every three weeks, transporting 5 kilos of drugs on a Greyhound bus through Chicago

and then hiring a cab for $5,000 to drive to Cleveland, and desiring, upon release from prison, to

be a "Kingpin" in Cleveland.  ECF No. 129 at PageID #: 1243, ⁋ 65.

### 2.  Sentencing and Appeal

---

[7] At sentencing, the Court noted: "I know that you disavow the use of drugs, but I find it interesting that on the day you were arrested, you tested positive for cocaine.  How unlucky is that?  You don't use drugs, but when you were arrested in October of 2019, you were positive for cocaine."  ECF No. 142 at PageID #: 2943.

(1:19CR717)

At sentencing, Petitioner made several objections to his PSR.  ECF No. 129.  First, Petitioner objected to the § 841 enhancement, claiming that his prior state-court conviction for rape did not constitute a "serious violent felony" because it was not committed with force.  ECF No. 129 at PageID #: 1250.  The Government concurred and moved to withdraw the enhancement, which the Court granted.  ECF No. 142 at PageID ##: 2889-89.

Petitioner also objected to the PSR's attribution of 4.5 kilograms of methamphetamine, the two-level leadership enhancement, and criminal history calculation.  ECF No. 129 at PageID ##: 1250-53.  The Court considered Petitioner's objections and overruled each of them.  ECF No. 142.  Petitioner's final offense level was calculated at 40 with a Criminal History Category III. The Court varied downwards two levels to an offense level 38 and Criminal History Category III, setting the recommended sentence range at 292 months to 365 months.  ECF No. 142 at PageID ##: 2940-41.  The Court imposed a 292-month sentence (the low end of the Guidelines range), followed by 10 years of supervised release.  ECF No. 142 at PageID #: 2941.

Petitioner appealed his conviction and sentence.  The Sixth Circuit affirmed the Court's judgment.  *United States v. Hayward*, No. 22-3533, 2023 WL 3886407, at *1 (6th Cir. Feb. 22, 2024).  *See also*, ECF No. 145.  Petitioner filed a petition for writ of *certiorari* (ECF No, 147) which the Supreme Court denied.  ECF No. 148.

## II.  STANDARD OF LAW

### A.  **Section 2255** Legal Standard

Title 28 U.S.C. § 2255 sets forth four grounds upon which a federal prisoner may base a claim for relief: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255.  To prevail on a § 2255 motion, Petitioner must show an

9

(1:19CR717)

error of constitutional magnitude that had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). Petitioner must prove by a preponderance of the evidence that his constitutional rights were denied or infringed. *United States v. Brown*, 957 F.3d 679, 690 (6th Cir. 2020).

### B. Evidentiary Hearing.

"Where a § 2255 motion and the files and records of the case conclusively show that the moving party is entitled to no relief, . . . no hearing of any kind is required[,]" including an evidentiary hearing. *Green v. United States*, 65 F.3d 546, 548 (6th Cir. 1995) (citing *Bryan v. United States*, 721 F.2d 572, 577 (6th Cir. 1983), *cert. denied*, 465 U.S. 1038 (1984)). Relying on this guidance, the Court finds that the motion at bar may be resolved without an evidentiary hearing because the files and records in this case conclusively show that Petitioner is not entitled to relief under § 2255. *Ross v. United States*, 339 F.3d 483, 490 (6th Cir. 2003).

### III. LAW AND ANALYSIS

### A. Grounds Asserted in Petitioner's § 2255 Motion

Petitioner timely filed his § 2255 motion, alleging ineffective assistance of counsel relating to pre-indictment plea negotiations. ECF No. 149. Petitioner claims that his defense counsel convinced him to reject a pre-indictment plea offer for the 120-month mandatory minimum and failed to seek out a favorable plea agreement throughout the criminal proceedings. ECF No. 149 at PageID #: 3139; ECF No. 152 at PageID #: 3162.

In his traverse, Petitioner includes several additional grounds for relief alleging new ineffective assistance of counsel and prosecutorial misconduct grounds. ECF No. 152. Although unnumbered, the Court identified (and will construe as grounds for relief) the following:

> (1) Attorney Bradley failed to pursue a favorable plea offer or convey other plea offers from the Government because all such offers included the 15-year mandatory minimum enhancement under §

(1:19CR717)

841, to which Petitioner had stated he was unwilling to agree. ECF No. 152 at PageID ##: 3162, 3165.

(2) Attorney Bradley failed to adequately explain the importance of the Rule 404(b) motions to Petitioner's case. ECF No. 152 at PageID #: 3163.

(3) Attorney Bradley failed to properly calculate Petitioner's potential sentence range and advise Petitioner about the potential consequences of proceeding to trial. ECF No. 152 at PageID #: 3164.

(4) Attorney Bradley abandoned trial strategy and failed to properly question witnesses and present evidence. ECF No. 152 at PageID #: 3164.

(5) The Government refused to withdraw the § 841 enhancement until sentencing, which prejudiced Petitioner's defense strategy and decision-making. ECF No. 152 at PageID #: 3165.

Only the first of these additional grounds relates to Petitioner's initial motion concerning counsel's assistance during plea negotiations. *Compare* ECF No. 149 *with* ECF No. 152. In general, claims raised for the first time on traverse are not properly before the Court. *Jackson v. United States*, No. 3:19-cr-418, 2023 WL 6290779, at *2 n. 1 (N.D. Ohio Sept. 27, 2023) (citing *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005)) (habeas petitioners cannot add new claims for the first time in a traverse or reply brief.); *United States v. Jones*, Nos. 5:14-cr-119/5:17-cv-190, 2018 WL 5046669, at * 5 (E.D. Ky. Oct. 17, 2018) (collecting cases) ("Allowing a habeas petitioner to present new claims for the first time in his reply brief undermines the adversary process because the government has no opportunity to respond to these new claims.").

Although Petitioner's traverse does not request leave to amend, *pro se* habeas corpus pleadings are held to less stringent standards than formal pleadings drafted by lawyers and must be liberally construed. *See* Urbina, 270 F.3d at 295. The Sixth Circuit holds that "[a] motion to amend a § 2255 motion is governed by Federal Rule of Civil Procedure 15(a), which provides that leave to amend a pleading should be 'freely give[n] . . . when justice so requires." *United*

11

(1:19CR717)

*States v. Clark*, 637 F. App'x 206, 208 (6th Cir. 2016) (quoting Rule 15(a)) (alteration in original).  Because ECF No. 152 was filed within the one-year statue of limitation, the Court can and does consider the additional grounds alongside Petitioner's initial petitioner (ECF No. 149).  Even so, the additional grounds alleged in the traverse fail on the merits.

### B.  Ineffective Assistance of Counsel

The Sixth Amendment guarantees criminal defendants the right to constitutionally effective assistance of counsel during all "critical" stages of criminal proceedings, including plea negotiations.  *Carson v. United States*, 88 F.4th 633, 639 (6th Cir. 2023) (citing *Frye*, 566 U.S. at 140-44).  Courts presume counsel is effective; therefore, a petitioner has a significant hurdle in establishing counsel was ineffective.  *See, e.g., Davis v. Jenkins*, 115 F.4th 545, 564 (6th Cir. 2024) (citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).  In *Strickland*, the Supreme Court held:

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

466 U.S. at 686.  To establish that counsel was ineffective, a defendant must prove that: (1) the counsel's performance was deficient; and (2) the deficient performance prejudiced the defendant.  *Id*. at 687.

A counsel's performance is deficient when that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  *Id*.  In determining whether counsel's performance prejudiced the defendant, "Petitioner must show a reasonable probability that, but for his attorney's errors, the proceedings would have produced a different result."  *Ross*, 339 F.3d at 492 (citing *Strickland*, 466 U.S. at 694).  "When applying *Strickland*, if we can more easily dispose of an ineffective assistance claim based on lack of

12

(1:19CR717)

prejudice, we should follow that route." *Id*. (citing *Watson v. Marshall*, 784 F.2d 722, 726 (6th Cir. 1985)).

When asserting ineffective assistance of counsel for advice to reject a plea offer and proceed to trial, the defendant must show: (1) a "reasonable probability" that they would have accepted the offer but for counsel's deficient advice; (2) a "reasonable probability" that the court would have approved the plea deal; and (3) that the plea agreement would have led to a less severe outcome than resulted from the trial. *Carson*, 88 F.4th at 640 (citing *Lafler v. Cooper*, 566 U.S. 156, 164 (2012)); *Frye*, 566 U.S. at 147. Counsel's failure to initiate plea negotiations may also satisfy the ineffective assistance of counsel standards set forth in *Strickland*. *See Byrd v. Skipper*, 940 F.3d 248, 257 (6th Cir. 2019). Petitioners asserting such claims must also demonstrate that, but for their attorney's failure to initiate plea negotiations, they would have received a plea offer. *Carson*, 88 F.4th at 640 (citing *Byrd*, 940 F.3d at 257).

Aside from the self-serving statements made by Petitioner in his § 2255 motion, the record reveals no "reasonable probability" that Petitioner would have accepted a pre-indictment (or any other) plea offer. *See Carson*, 88 F.4th at 640. Neither does the record indicate that defense counsel failed to relay a more favorable offer; or to initiate or engage in plea negotiations. *See Byrd*, 940 F.3d at 257. Rather, the record demonstrates Petitioner's adamant claims of innocence and his explicit intention to not plead guilty. *See, e.g.*, Pet. Ltrs., ECF No. 131. Because he cannot show a "reasonable probability" that he would have accepted a plea offer, Petitioner's ineffective assistance of counsel claim is denied.

13

(1:19CR717)

### C. Pre-indictment Plea Negotiations

#### 1. *No formal plea offers*

Petitioner first maintains that the Government offered, and he accepted through a public defender, Jeffrey Lazarus,[8] a plea agreement on Count I for the 120-month mandatory minimum sentence prior to his indictment, after which the mandatory minimum increased to 15 years because the Government filed a § 841 enhancement.  ECF No. 149 at PageID #: 3139.  The Government retorts that no such agreement was approved or formally offered to Petitioner. Gov't Opp. Br., ECF No. 151 at PageID #: 3152.  Rather, it explains that there were only preliminary discussions with Attorneys Lazarus and Bradley about such an offer, which Petitioner rejected.  ECF No. 151 at PageID ##: 3152-53.

The record supports the Government's position that Petitioner was never offered a formal plea agreement that would have capped his term of incarceration at 120 months.  Emails exchanged show that Government and defense counsels discussed the possibility of a pre-indictment plea agreement for a 10-year mandatory minimum sentence.  ECF No. 149; ECF No. 151 at PageID #: 3157.  Petitioner admits that he discussed a possible pre-indictment plea with both Attorneys Lazarus and Bradley but that he ultimately decided to proceed to trial.[9]  ECF No. 149 at PageID #: 3139.  Petitioner's rejection of the pre-indictment discussions justifies the Government not seeking approval for or presenting Petitioner with a plea offer for consideration.

---

[8] As earlier indicated, Attorney Lazarus appeared on Petitioner's behalf during the preliminary and detention hearings conducted on October 31, 2019.  Petitioner's retained counsel, Attorney Bradley, was in trial at the time and unable to appear.  ECF No. 149 at PageID #: 3139.

[9] Petitioner's purported reasons for proceeding to trial and his current claim that he was "always willing" to plead to the 120-month mandatory minimum are addressed in greater detail below.

14

(1:19CR717)

Although Petitioner asserts there was a final plea offer made during trial (ECF No. 149 at PageID #: 3140), the record belies his assertion and the Government retorts that no such offer was made. ECF No. 151 at PageID ##: 3152-53. Further undercutting Petitioner's claims are the *Frye* inquiries made on three separate occasions on the open record. As earlier explained, in accord with the Supreme Court's guidance in *Missouri v. Frye*, the Court inquired about pending plea offers and resolutions at critical stages of the prosecution. *See* Min. of Proc. [non-document] Final Pretrial Conf. (Aug. 6, 2020); Suppression Hr'g, ECF No. 135 at PageID #: 1630; Trial Tr. vol. 2A, ECF No. 139 at PageID ##: 2218-19. At no time did Petitioner, his counsel, or the Government acknowledge that any plea negotiations or discussions had occurred after indictment, or that an offer had been made by either side. *See* ECF No. 139 at PageID ##: 2218-19.

That is not, however, the end of the inquiry. While there were no formal plea offers, there were preliminary plea discussions. ECF No. 149; ECF No. 139 at PageID ##: 2218-19. Therefore, the Court must determine whether defense counsel's advice during those negotiations prejudiced Petitioner. ECF No. 149 at PageID #: 3139; *Strickland*, 466 U.S. at 686. The answer is no.

### 2. *Pre-indictment plea discussions*

Petitioner argues that his defense counsel convinced him to reject the pre-indictment plea offer to 10-year mandatory minimum and failed to pursue other favorable plea offers. Pet. Mot., ECF No. 149. Petitioner makes two claims concerning the pre-indictment plea discussions. First, he claims Attorney Bradley told him to reject the plea agreement because: "they [will] indict a ham sandwich and we should wait for discovery." ECF No. 149 at PageID #: 3139. Second, he claims that Attorney Bradley told him the only available plea offer included the 15-year mandatory minimum under the § 841 enhancement, which the Government was unwilling to

(1:19CR717)

withdraw.  ECF No. 149 at PageID #: 3139; ECF No. 152 at PageID #: 3162.  In addition, Petitioner claims that Attorney Bradley failed to inform him about the cutoff to accept the plea offer of the 10-year mandatory minimum (*i.e.*, before the indictment hearing), or seek out a plea agreement before trial.  ECF No. 149 at PageID #: 3139.

An attorney's mistaken recitation of the conditions of a plea offer (or advice to reject such an offer until discovery has concluded) is immaterial if the defendant had no intention of accepting the offer under any circumstances.  In *Smith v. Cook*, a petitioner brought a habeas claim under 28 U.S.C. § 2254, alleging that his attorney failed to confer with him about the state's 27-year plea offer.  956 F.3d 377, 393 (6th Cir. 2020).  The Sixth Circuit noted that it was the petitioner's burden to demonstrate "a reasonable probability he and the trial court would have accepted the guilty plea."  *Id*. (quoting *Lafler*, 566 U.S. at 174) (internal quotations omitted).  Considering the record, the court concluded that the petitioner would have rejected the plea, even if his attorney had told him about it, because the state court had given him ample opportunity to pause trial and discuss the offer.  *Id*. at 394.  The court found no evidence the petitioner would have taken the deal when offered and, therefore, he could show no prejudice.  *Id*. at 394-95.  *See Carson*, 88 F.4th at 641 (holding that the habeas petitioner maintained his innocence through sentencing, undermining his argument that he would have accepted a plea agreement if offered).

The facts here mirror those in *Smith* and *Carson*.  According to Petitioner's § 2255 motion, he "begged [Attorney Bradley] to pursue the original offer [his] entire stay at CCA during pretrial," and was "always willing to accept [his] original and ultimately [his] correct mandatory minimum."  ECF No. 149 at PageID ##: 3139-40; ECF No. 152 at PageID #: 3162.  The record contradicts those claims.  The Court conducted three *Frye* inquiries, requesting that the parties state on the record whether any plea offers or resolutions were pending, discussed, or considered.  Min. of Proc. [non-document] Final Pretrial Conf. (Aug. 6, 2020); Suppression Hr'g

16

(1:19CR717)

and Final Pretrial Conf., ECF No. 135 at PageID #: 1630; Tr. of Trial, vol. 2A, ECF No. 139 at PageID ##: 2218-19.  Each time the Government stated that no formal offers had been presented to Petitioner and the defense team agreed.  ECF No. 135 at PageID #: 1630; ECF No. 139 at PageID ##: 2218-19.

Petitioner claims that during the final pretrial hearing, he attempted to raise the 120-month pre-indictment plea option with the Court, but that Attorney Bradely told him "there is no need to discuss the plea" because he had already been indicted.  ECF No. 152 at PageID #: 3161. This claim is dubious because the transcript excerpts cited by Petitioner relate to the Court's inquiry concerning his motion to revoke the order of pretrial detention, not to any pending or potential plea offers or case resolutions.  ECF No. 152-4; ECF No. 152-10; Final Pretrial Hr'g, ECF No. 136 at PageID ##: 1641, 1658.  In fact, after their private caucus, Attorney Bradley informed the Court that Petitioner "just wanted to express that under no circumstance would he want to be moved to the Mahoning County Jail" and Petitioner did not—neither on the record nor in one of his many letters to the Court—correct his counsel's statement.  ECF No. 152-4; ECF No. 136 at PageID #: 1658.  Furthermore, at trial, the Government described the pre-indictment plea discussions by stating, "[t]here were preliminary plea negotiations, but *no offers approved formally by the United States Attorney's Office that were presented to the defendant*." ECF No. 139 at PageID #: 2219 (emphasis added).  The defense team concurred and, despite the Court providing several opportunities to do so, neither Petitioner nor his lawyer spoke up about Petitioner's alleged willingness to accept a pre-indictment plea or asserted a desire to negotiate or accept a plea deal.  Min. of Proc. [non-document] Final Pretrial Conf. (Aug. 6, 2020); ECF No. 135 at PageID #: 1630; ECF No. 139 at PageID ##: 2218-19.

Petitioner's own words are also telling.  Throughout the criminal proceedings, Petitioner submitted 58 letters to the Court.  His family submitted 12 more.  Ultimately, the Court received

17

(1:19CR717)

70 letters regarding Petitioner.  ECF No. 131.  In nearly every letter, Petitioner maintained his innocence and claimed ignorance about the charges against him.  ECF No. 131.  Common refrains throughout the letters included: "I am totally innocent.  This isn't fair at all" (ECF No. 131 at PageID #: 1285);  "I didn't do this or have knowledge of it" (ECF No. 131 at PageID #: 1327); "I'm being tortured for something I had zero involvement with or knowledge of."  ECF No. 131 at PageID #: 1411; and "Please don't punish me for his drugs . . .  I knew nothing about them."  ECF No. 131 at PageID #: 1435.  At sentencing, Petitioner insisted he was telling "the truth in every letter" (Sent'g Hr'g, ECF No. 142 at PageID #: 2936), none of which indicate he was willing to accept a plea agreement.  ECF No. 131.  Indeed, the only letter that referenced a plea offer was sent by Petitioner in March 2020 and declared: "*I'll die before I plea to anything I had no knowledge of.*"  ECF No. 131 at PageID #: 1266 (emphasis added).

Moreover, during his sentencing, Petitioner exercised his right to offer no statement accepting responsibility.  About this, the Court stated:

> [Petitioner's] letters would contradict any such statement, because all the times he's written to me, he's done everything but demonstrate an acceptance of responsibility, basically deny knowledge of what brought him to court and claim that he wasn't involved.  If he was involved, he was either innocent or at least not guilty.

ECF No. 142 at PageID #: 2912.  In his sentencing allocution, Petitioner doubled down on his claims of innocence, stating, "I don't know nothing about no meth.  I don't know how it look, nothing about it."  ECF No. 142 at PageID #: 2934.  He also claimed he was "against drugs . . . against fentanyl . . . against meth . . . against that stuff."  ECF No. 142 at PageID #: 2935.  Such claims and statements are inconsistent with Petitioner's insistence that he was "always willing to accept [his] original . . . mandatory minimum."  *See* ECF No. 149 at PageID #: 3140.

18

(1:19CR717)

Nothing in his letters, *Frye* hearing representations, or sentencing allocution demonstrate a "reasonable probability" Petitioner was willing to plead guilty or accept a plea offer under any conditions, even if one had been offered to him.  Therefore, he cannot show prejudice resulting from his attorney's alleged failure to negotiate or procure such an offer.  Accordingly, his ineffective assistance of counsel claim is denied.

### D.  Petitioner's Additional Grounds for Relief

Petitioner's § 2255 motion advances a single ineffective assistance of counsel claim relating to Attorney Bradley's advice concerning the pre-indictment plea discussions.  In his reply, Petitioner offers, for the first time, additional claims relating to Attorney Bradley's trial performance and alleged prosecutorial misconduct.  As noted above, arguments raised for the first time in a reply brief are generally waived.  *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010); *Tyler*, 416 F.3d at 504) (holding that the district court did not err in declining to address the petitioner's insufficiency of the evidence claims brought for the first time on traverse).  Notably, however, because *pro se* habeas pleadings are liberally construed (*see Urbina*, 270 F.3d at 295), and the traverse was filed within the one-year statute of limitations, the Court considers the additional grounds alongside the initial motion and concludes that each fails on the merits.

First, Petitioner's claim that Attorney Bradley did not explain the importance of the Rule 404(b) motion, even if true, does not entitle him to relief under § 2255.  ECF No. 152 at PageID #: 3163.  Petitioner identifies two objections his attorney raised during trial regarding the introduction of character evidence, including a video and social media accounts.  *See* ECF No. 152-13; ECF No. 152-14.  Petitioner included transcript excerpts from trial, but failed to explain how his attorney's objections or arguments were deficient.  ECF No. 152 at PageID #: 3163.  This is insufficient, as Petitioner must "set forth facts which entitle him to relief."  *Whittingham v. United States*, No. 24-1621, 2025 WL 243963, at *2 (6th Cir. Jan. 2, 2025) (quoting *O'Malley*

19

(1:19CR717)

*v. United States*, 285 F.2d 733, 735 (6th Cir. 1961) (internal quotations omitted)). Unsupported or conclusory statements cannot support an ineffective assistance of counsel claim. *Id.* (quoting *Lynott v. Story*, 929 F.2d 228, 232 (6th Cir. 1991)). Neither has Petitioner explained how his understanding (or lack thereof) regarding the importance of the Rule 404(b) motions impacted the outcome of the trial. *See Ross*, 339 F.3d at 492 (noting a petitioner must demonstrate a "reasonable probability" that but for the attorney's deficient performance, the outcome would have been different.). Because he has not shown prejudice, this argument lacks merit. *Id.*

Second, Petitioner's claim that Attorney Bradley's sentencing miscalculation led Petitioner to plead not guilty also fails. Petitioner claims Attorney Bradley told him he would "get but little more than 15 if not 15 if [he] proceed[ed] to trial." ECF No. 152 at PageID #: 3164. Erroneous sentencing calculations or estimations by defense counsel, alone, do not support an ineffective assistance of counsel claim. *Mix v. Robinson*, 64 F. App'x 952, 956-57 (6th Cir. 2003) (quoting *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1994)); *Ewing v. United States*, 651 F. App'x 405, 410 (6th Cir. 2016). Petitioner's claim that he would have agreed to plea but for counsel's mistaken sentencing calculations is not well-taken. As discussed above, he was never presented with a formal plea offer and the record shows no "reasonable probability" that he sought or would have accepted a plea even if presented with one. *Supra*, Section III.C; *see* ECF No. 131 at PageID #: 1266 ("I'll die before a plea to anything I had no knowledge of."). Therefore, he cannot show that, but for Attorney Bradley's alleged sentence miscalculation, he would have accepted the plea offer.

Third, Petitioner claims Attorney Bradley "abandoned" trial strategy in the middle of cross-examining Hill and in deciding not to call Petitioner's fiancée as a witness. ECF No. 152 at PageID #: 3164. An attorney's decision to call (or not call) a witness to testify does not constitute ineffective assistance of counsel if it is "made after thorough investigation of law and

(1:19CR717)

facts relevant to plausible options." *Hale v. Davis*, 512 F. App'x 516, 521 (6th Cir. 2013) (citing *Strickland*, 466 U.S. at 690).  Petitioner admits that Attorney Bradley started prepping his fiancée to testify but later determined she would not be a credible witness.  ECF No. 152 at PageID #: 3164.  Petitioner offers no evidence or explanation why this decision was unreasonable or how his fiancée's testimony would have affected the outcome of the trial.  *See Lynott*, 929 F.2d at 232 (rejecting the petitioner's ineffective assistance of counsel claim for failing to call "favorable witnesses" because petitioner's motion failed to identify such witnesses or show how such testimony would impact the outcome of the proceedings.).

Similarly, Petitioner points to Hill's cross-examination during trial as evidence that Attorney Bradley's questions were inadequate.  ECF No. 152 at PageID #: 3164; ECF No. 152-6. Yet Petitioner does not identify which part of counsel's examination was deficient, only arguing that Hill lied during his testimony.  ECF No. 152 at PageID #: 3164.  Petitioner's arguments concerning Hill's credibility raised on direct appeal failed; he cannot relitigate those arguments in his § 2255 motion.  *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999) ("[A] § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law."). The Sixth Circuit has already determined that the evidence, including Hill's testimony, was sufficient to convict Petitioner, and stated that it would not disturb the jury's credibility determination.  *Hayward*, 2024 WL 3886407 at * 3.  Therefore, Petitioner's claim that Attorney Bradley's trial strategy and performance were deficient is meritless.

Finally, Petitioner advances what appears to be a claim for prosecutorial misconduct, alleging that the Government manipulated him into proceeding to trial by including the § 841 enhancement, only to withdraw it at sentencing.  ECF No. 152 at PageID #: 3165.  This claim should have been raised on direct appeal and is improperly raised in a § 2255 motion.  *See*

21

(1:19CR717)

*Oppong v. U.S.*, No. 24-3246, 2025 WL 655542, at *4 (6th Cir. Feb. 28, 2025) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)).  Moreover, a petitioner is only entitled to habeas relief for prosecutorial misconduct that was "so pronounced and persistent that it permeate[d] the entire atmosphere of the trial or so gross as probably to prejudice the defendant." *Cunningham v. Shoop*, 23 F.4th 636, 677 (6th Cir. 2022) (citing *Harman v. Bagley*, 492 F.3d 347, 367 (6th Cir. 2007)).  Essentially, Petitioner claims that, but for the Government waiting to withdraw the enhancement, he would have sought or agreed to plead guilty.  ECF No. 152 at PageID #: 3165.  This argument is meritless and belied by the record, which demonstrates Petitioner was unwilling to plead guilty regardless of the enhancement.  *Supra* Section III.C.  As discussed above, Petitioner rejected the pre-indictment plea agreement (which did not include the enhancement) (ECF No. 151-1) and later declared that he would "die" before pleading guilty.  ECF No. 131 at PageID #: 1266.  Petitioner has not identified any evidence showing that his decision to proceed to trial was based on the inclusion of the enhancement, nor that he would have considered a 10-year plea offer even if formally presented.  Therefore, this argument fails on the merits.

## IV.    CONCLUSION

For the reasons above, the grounds for relief alleged in Petitioner's Motion to Vacate and/or Correct Petitioner's Sentence under 28 U.S.C. § 2255 are denied.  As written herein, an evidentiary hearing would not have aided the Court's ability to discern and resolve the issues presented.

(1:19CR717)

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability.  28 U.S.C. §2253(c); Fed. R. App. P. 22(b).  A separate Order of Dismissal will issue.

IT IS SO ORDERED.

November 3, 2025                                    /s/ Benita Y. Pearson
Date                                                        Benita Y. Pearson
                                                              United States District Judge

23